UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| DAIRY MART, IFRAN KASHIF, OWNER, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>Defendant. ) | Civil Action No.: 14-cv-30180-MGM |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff brings this action under the Food and Nutrition Act of 2008 ("Act") appealing his disqualification from participation in the Supplemental Nutrition Assistance Program ("SNAP"). The plaintiff challenges the permanent disqualification on the grounds that the store owner did not participate in or benefit from the violations. Complaint ¶ 4. The plaintiff also argues for a civil monetary penalty in lieu of disqualification. Complaint ¶ 8. The administrative record supports the violation and the penalty. Therefore, summary judgment should enter in favor of the United States.

### STATUTORY AND REGULATORY BACKGROUND

The United States Department of Agriculture, Food and Nutrition Service ("FNS") administers SNAP, which provides monetary assistance for low-income individuals to buy eligible food items. See 7 C.F.R. § 278.2. SNAP's mission is "to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. SNAP benefits are delivered through electronic benefit transfer ("EBT") cards which can be used much like a debit cards at authorized retail food stores. 7

C.F.R. § 274.12.  The regulations prohibit retail stores from accepting EBT benefits as payment for ineligible items and from exchanging EBT benefits for cash.  7 C.F.R. § 271.2.

FNS conducts periodic reviews of stores and investigations into store violations.  Potential penalties for violations include a civil monetary penalty ("CMP") or disqualification from participation in SNAP.  7 C.F.R. § 278.6.  Exchanging EBT benefits for cash, also known as trafficking, requires permanent disqualification unless the store can produce substantial evidence that it had a compliance policy and training program in place prior to the violation; the store owner was unaware of the violation; and the food store did not benefit from the trafficking.  7 U.S.C. §2021(b)(3)(B).

The regulations provide a system of administrative and judicial review.  A retailer may request administrative review by an Administrative Review Officer ("ARO").  7 C.F.R. § 278.8.  Upon completion of the review, the ARO renders the final agency decision and notifies the retailer.  7 C.F.R. § 279.5.  If dissatisfied with the final decision, the retailer may seek judicial review.  7 C.F.R. § 279.7(a).

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff, Irfan Kashif, owns and operates Dairy Market, a retail food store, located in Holyoke, Massachusetts.  The store was authorized to participate in SNAP as of January 2007.  AR 1.

2. The FNS conducted an undercover investigation of the store between November 26, 2013, and February 10, 2014, during which a store clerk engaged in four acts of trafficking in SNAP benefits detailed below.  AR 40.

---

[1] The statement of facts is based on the certified Administrative Record ("AR") filed as Ex. 1.

3. On January 8, 2014, an undercover investigator used an EBT card to buy $3.98 in eligible items. After the transaction, a store clerk and the investigatory discussed exchanged SNAP benefits for cash. The clerk asked "how much do you want?" The investigator replied "$50." The clerk replied: "The boss does not want the cards done here. I can take it shopping...I get groceries for the stores on the card and pay you." The clerk told the investigator to call him the following day to arrange a meeting. AR 54.

4. On January 9, 2014, the investigator met the clerk outside the Save-A-Lot, a large grocery store. The clerk selected a carriage, entered the store with the investigator, and filled the cart with groceries. The clerk confirmed with the investigator that the amount to be used on the card was $100. The investigator swiped his EBT card to pay for $106.13 in groceries. AR 57, 58. The items purchases included 26 Banquet brand frozen meals. AR 59. Outside in the parking lot, the clerk gave the investigator $50 in cash and they discussed doing "a couple more" in a few days. The clerk left with the groceries. AR 58. The Dairy Market carries Banquet brand meals in its freezer case. AR 34.

5. On January 29, 2014, the investigator followed the clerk to the back of the Dairy Market store. The clerk said he would take one of the two $150 EBT cards offered by the investigator for $75. At the clerk's request, the investigator provided the PIN needed to use the card. The clerk instructed the investigator to call the next day. AR. 66-67. EBT records show the investigator's EBT card was used to buy $141.91 in merchandise at BJ's Wholesale Club and $8 in merchandise at Dairy Market. Later that day, the clerk paid the investigator $60, which he got from his car parked outside the Dairy Market, and $15 he got from the store cash register. AR 68, 70.

6. Also on January 29, 2014, the clerk said he would take the investigator's second card, which the investigator provided along with a notation of the amount ($195) and the PIN. The investigator arranged to retrieve the card and collect payment on Monday. AR 72. EBT records show the EBT card was used on February 1, 2014, to buy $104.54 in merchandise at PriceRite and $53.91 in merchandise at Save-A-Lot for a total of $196.35. AR 73. On February 3, 2014, the investigator met the clerk at the Dairy Market where the clerk returned the EBT card and gave him five $20 bills from his wallet. AR 75.

7. On February 6, 2014, the investigator gave the clerk an EBT card while they were in the vestibule of the Dairy Market. The investigator told the clerk there was $380 on the card; the clerk said to give him a couple of day. AR 85. EBT records show the EBT card was used to buy $90.72 in merchandise at Walmart on February 7, 2014; $41 in merchandise at Family Dollar Store, $4.75 in merchandise at Dairy Market, and $129.05 in merchandise at PriceRite on February 8, 2014; and $70.77 in merchandise at Walmart on February 10, 2014. AR 86. On February 10, 2014, the clerk handed the investigator ten $20 bills in the vestibule of the Dairy Market. AR 88.

8. On May 20, 2014, FNS notified the plaintiff of the investigation and the findings of violations. AR 37-39. FNS advised the plaintiff he was being considered for permanent disqualification from SNAP for trafficking in SNAP benefits. The letter invited a response to the charge, along with any evidence for consideration, within 10 days. AR 37-39.

9. On May 29, 2014, the plaintiff (through his lawyer) responded to the charge by letter, requesting a civil monetary penalty instead of permanent disqualification on a number of grounds, including: (1) the trafficking was done by an employee; (2) the violations took place outside of the store; (3) the plaintiff had trained the employees personally about EBT/SNAP

regulations; (4) the store was in an impoverished area so disqualification would harm the community; and (5) the plaintiff had no previous violations. AR 92-93.

10. On June 11, 2014, the FNS denied the plaintiff's request for an alternative penalty and imposed a permanent disqualification. The denial stated the plaintiff was not eligible for a CMP because he failed to submit evidence of an effective compliance policy. AR. 100-01.

11. On June 17, 2014, the plaintiff requested administrative review of the sanction. The attorney submitted a letter stating the plaintiff had a policy for training his employees about the proper procedure for SNAP transactions, personally trained his employees, had taken new steps to ensure violations will not occur again, and intended to spend more time supervising his employees. The appeal included a copy of a Compliance Policy which the attorney said the plaintiff now provided to new employees and posted in the store. AR 104-07.

12. On June 18, 2014, FNS confirmed receipt of the appeal invited the plaintiff to provide the agency with any additional evidence that would support his case. AR 109.

13. On July 1, 2014, the plaintiff provided evidence that he had fired the clerk in question and reported the clerk's actions to the police, although had not pressed charges believing FNS would take action against the clerk. The plaintiff also reiterated the community's reliance on his store as a SNAP resource. AR 114-23.

14. On September 16, 2014, the ARO affirmed the disqualification. AR 131-39.

## STANDARD OF REVIEW

A retailer may seek "de novo" judicial review of the validity of administrative action by the FNS. 7 U.S.C. § 2023(a)(13). See also Com. of Mass., Dep't of Public Welfare v. Sec'y of Agriculture, 984 F.2d 514, 520 (1st Cir. 1993). While the administrative record is the starting point, the retailer may introduce new evidence in the judicial proceeding. Id. The store owner

bears the burden of showing by a preponderance of the evidence that the violations did not occur. Fells v. United States, 627 F.3d 1250, 1253 (7th Cir. 2010) (citing consistent decisions from other circuits imposing the burden of proof on the party seeking to set aside agency action).  See also Hajifarah v. United States, 779 F.Supp.2d 191, 204 (D. Me. 2011) (holding a plaintiff challenging food stamp violations bears burden of showing the agency action was invalid).

"[T]his searching standard is restricted to liability determinations. It does not spill over to penalty determinations.  A court scrutinizing administrative remedies or sanctions imposed under the Food Stamp Act may only overturn those actions that appear arbitrary, capricious, or contrary to law.  Id. at 520 (citing Broad St. Food Mkt. v. United States, 720 F.2d 217, 220 (1st Cir. 1983)).  See also, Collazo v. United States, 668 F.2d 60, 65 (1st Cir. 1981) (choice of disqualification in lieu of money penalty affirmed under abuse of discretion review); Diaz Supermarket, Inc. v. United States, No. 10-30238-KPN, 2011 WL 3705197 (D. Mass. Aug. 23, 2011) (same).  Additional evidence may not be considered in reviewing the agency's choice of penalty.  Broad St. Food. Mkt., 720 F.2d at 219.

The violation and the propriety of the penalty can both be decided on summary judgment. See Kim v. United States, 121 F.3d 1269, 1269 (9th Cir. 1997) (affirming decision to grant summary judgment on question of violation and penalty).

**ARGUMENT**

I.      **The Undisputed Facts Establish Trafficking in SNAP Benefits**

The plaintiff's challenge to the violation is based on his claim that he did not know of or benefit from the trafficking. Complaint ¶ 4. Even if the court accepted the plaintiff's claim, the undisputed facts still establish the violation because the owner's knowledge and benefit is irrelevant to the violation determination.[2]

Penalties for trafficking in food stamps apply to all store owners regardless of fault. See e.g., Traficanti v. United States, 227 F.3d 170, 175 (4th Cir. 2000); Kim v. United States, 121 F.3d 1269, 1273 (9th Cir. 1997) (listing cases); TRM v. United States, 52 F.3d 941, 945 (11th Cir. 1995). Congress chose "such a strict liability regime in order to ensure that the person in the best position to prevent fraud – the owner – had sufficient incentive to stop wayward employees from stealing from the government." Traficanti, 227 F.3d at 175. Congress included money penalties a potentially softer sanction for innocent store owners but only in limited cases. TRM, 52 F.3d at 945. The statute authorizes permanent disqualification of innocent store owners when appropriate. Id.

Here, the plaintiff essentially admitted that his employee trafficked in SNAP benefits by reporting the incident to the police. AR 116-17. His alleged lack of fault is no defense to the violation. Therefore, the agency's determination that trafficking occurred must be upheld.

---

[2] The conversations between the investigator and the clerk demonstrate that the trafficking benefited the store; the investigator's EBT card was used to buy inventory for the store. See AR 54. However, for the purpose of this argument only, the United States will accept the plaintiff's claimed lack of knowledge and personal benefit. The United States does not concede this point for the purpose of evaluating the appropriateness of the penalty. (Section II below).

## II. Imposition of Permanent Disqualification was not Arbitrary or Capricious

The plaintiff cannot show that the agency acted in an arbitrary and capricious manner by permanently disqualifying him from SNAP. An agency's choice of sanction "is not to be overturned unless it is "'unwarranted in law . . . or without justification in fact." Broad St. Food Mkt., 720 F.2d at 220. 217, 220 (1st Cir. 1983). In assessing a penalty under that standard, the court should consider whether

> the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the produce of the agency's expertise.

Objio v. United States, 113 F.Supp.2d 204, 208 (D. Mass. 2000) (quoting Motor Vehicle Mfrs. Ass'n. v. State Farm Ins., 463 U.S. 29, 43 (1983).

In this case, the record shows the agency duly considered the plaintiff's arguments for a civil monetary penalty in light of the regulatory framework for allowing a monetary sanction in lieu of disqualification. AR 100-01, 131-39. The governing statute provides that the disqualification shall be permanent the first time the store exchanges SNAP benefits for cash. 7 U.S.C. § 2-21(b)(3)(B). See also 7 C.F.R. § 278.6(e) ("FNS shall disqualify a firm permanently if personnel of the firm have trafficked"). Actions taken after the violation – such as firing the employee or making greater efforts to prevent trafficking – are irrelevant. The regulations do not provide for reduction or waiver of a penalty based on subsequent compliance efforts.

While regulations authorize a money penalty in lieu of disqualification under certain narrow circumstances, the record shows the agency acted within its discretion in finding the plaintiff had not satisfied the conditions. The regulations provide the agency "*may* impose a civil

money penalty as a sanction in lieu of disqualification for trafficking" if the firm provides "*substantial evidence*" it meets the following requirements:

    1,    the firm has an effective compliance policy as outlined in the regulations;

    2.    the compliance policy and program were in operation before the violation took place;

    3.    the firm had an effective personnel training program as outlined in the regulations; and

    4.    firm ownership was not aware of and did not benefit from the conduct or it was only the first occasion when a member of firm management was aware of or benefited from the conduct.

7 C.F.R. § 278.6(i) (emphasis added).[3]

The plaintiff did not come close to producing substantial evidence satisfying any of the four requirements. The plaintiff only submitted a letter from his attorney without any supporting evidence within the initial regulatory 10-day period provided in 7 C.F.R. § 278.6(b)(ii). AR 92-93. On appeal the plaintiff submitted a document titled "compliance policy." However, he provided no evidence that the policy was in place before the violations. AR 106-07. Indeed, his attorney's description of the compliance policy and training suggests that most compliance efforts began after the FNS notice of violations. AR 104-05.

The only evidence the plaintiff offered as to his lack of awareness of or benefit from the trafficking were payroll records showing he terminated the clerk who engaged in the trafficking

---

[3] The plaintiff claimed during the administrative process that he was eligible for a money penalty instead of disqualification because disqualification would cause a hardship to the community. AR 93-94, 114-15. Hardship to the community, however, is not a basis for substituting a money penalty for permanent disqualification for trafficking. 7 C.F.R. § 278.6(f)(1).  See also Kim, 121 F.3d at 1275.

and police records of his report of the clerk's conduct.  AR 116-22.  Against that scant evidence, the agency had the statements of the investigator who reported the clerk told him that his boss did not want the trafficking done at the store and that he used the EBT cards to get groceries for the store.  AR 54.  The clerk's reported words were borne out by the shopping trip to Save-A-Lot where the clerk bought 26 Banquet brand frozen meals.  AR 58.  Photographs of the freezer case at the plaintiff's Dairy Market shows he stocked Banquet brand dinners.  AR 34.

Here, the record establishes the agency relied on the regulatory factors in applying the penalty of permanent disqualification, gave due consideration to all key aspects of the case, and had a record that supported its decision.  Ojio, 113 F.Supp.2d at 208.  Under these circumstances, the agency's decision cannot be said to be arbitrary, capricious, or an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the  United States respectfully requests the court enter judgment in its favor affirming the agency's decision.

                Respectfully submitted,
                THE UNITED STATES
                By its attorney,
                CARMEN M. ORTIZ
                United States Attorney

By:   */s/ Karen L. Goodwin*      
       Karen L. Goodwin
       BBO 549398
       Assistant U.S. Attorney
       300 State Street
       Springfield, MA 01105
       (413)-785-0269
       Karen.Goodwin@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Karen L. Goodwin*
KAREN L. GOODWIN
Dated:  12/29/15                                        Assistant U.S. Attorney