UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRFAN KASHIF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-30180-MGM |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 21)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

Plaintiff Irfan Kashif ("Plaintiff") commenced this action, pursuant to 7 U.S.C. §

2023(a)(13)-(15) and 7 C.F.R. § 279.7, seeking judicial review of his store's permanent

disqualification from the Supplemental Nutrition Program ("SNAP") by the Food and Nutrition

Service ("FNS") of the United States Department of Agriculture ("USDA").  FNS permanently

disqualified Plaintiff after it concluded that he had engaged in the trafficking of SNAP benefits

as defined by 7 C.F.R. § 271.2.  Plaintiff claims (1) that he neither knew of nor engaged in

trafficking of SNAP benefits, and (2) that FNS abused its discretion by refusing to impose a civil

monetary penalty ("CMP") in lieu of permanent disqualification.  The government moves for

summary judgment dismissing the complaint (Dkt. No. 21).  Plaintiff objects (Dkt. No. 23).  For

the reasons stated below, the court recommends allowing the motion for summary judgment.

II.    FACTUAL BACKGROUND

SNAP was established under the Food Stamp Act of 1964, 7 U.S.C. §§ 2011-2036, and is

operated by FNS.  *See Rockland Convenience Store v. United States*, Civil No. 10-CV-260-LM,

2011 WL 5120410, at *1 (D.N.H. Oct. 27, 2011).  SNAP "permit[s] low-income households to

obtain a more nutritious diet through normal channels of trade by increasing food purchasing

power for all eligible households who apply for participation."  7 U.S.C. § 2011.  "SNAP

benefits are provided to eligible households by means of electronic benefit transfer ('EBT')

cards."  *See* 7 U.S.C. §§ 2012(i), 2016(a).  "The EBT system is the modern replacement for

traditional paper food stamps."  *Idias v. United States,* 359 F.3d 695, 696 (4th Cir. 2004).  It

"utilizes plastic cards which are 'swiped' at the cash register like a credit card."  *McClain's Mkt.*

*v. United States,* 411 F. Supp. 2d 772, 773 n.2 (N.D. Ohio 2005).  EBT cards may be used "only

to purchase food in retail food stores which have been approved for participation in [SNAP]."  7

U.S.C. § 2016(b).  "EBT cards 'may be accepted . . . only in exchange for eligible food,' 7 C.F.R.

§ 278.2(a), which means that, as a general rule, EBT cards 'may not be accepted in exchange for

cash.'"  *Rockland Convenience Store*, 2011 WL 5120410, at *2 (quoting 7 CFR § 278.2(a)).

Plaintiff owned the Dairy Market[1] convenience store in Holyoke, Massachusetts

(Administrative Record "A.R." at 1, 3).  Plaintiff's store was authorized to participate in SNAP in

2007, and was reauthorized in 2012 (*id.* at 128).  At those times, Plaintiff "was provided [with]

the standard SNAP training materials together with posters for store display," which indicate that

SNAP benefits are to be exchanged only for eligible food items (*id.* at 136).

The Dairy Market was the target of an investigation by an undercover FNS agent

("Investigator") from November 2013 through February 2014 (*id.* at 40).  The FNS alleged that

one of the Dairy Market's employees ("the clerk") engaged in trafficking on four separate

occasions in January and February 2014 (*id.* at 40, 55, 68, 73, 86).  The trafficking charges

---

[1] Although the complaint designates the store's name as the "Dairy Mart" (Dkt. No. 1),
Defendant's submissions and the Administrative Record indicate that the store is the "Dairy
Market" (Dkt. No. 22 at 2; A.R. at 1).

resulted in the sanction of permanent disqualification from participation in SNAP (*id.* at 37-39, 100-101, 138).

On January 8, 2014, the Investigator nodded toward his EBT card when the clerk swiped it for the Investigator's purchase at the Dairy Market (*id.* at 51, 53).  The clerk told the Investigator to "'wait'" and handed the card back to him (*id.* at 53).  After the other customers left the store, the clerk asked, "'How much do you want?'" (A.R. at 54).  The Investigator responded, "Fifty dollars" (*id.*).  The clerk told the Investigator:  "'The boss doesn't want the cards done here.  I can take it shopping. . . . I get groceries for the stores on the card and pay you'" (*id.*).  The clerk instructed the Investigator to call him the next morning and arranged to meet him at the Save-a-Lot market (*id.*).

The next day, the Investigator met the clerk at Save-a-Lot as previously arranged (*id.* at 55, 57).  The clerk filled a shopping cart with groceries, confirmed that $100 was available for purchases on the Investigator's EBT card, and used the Investigator's EBT card at Save-a-Lot's check-out (*id.* at 57-58).  The merchandise cost $106.13 (*id.* at 55, 58).  The clerk paid the Investigator $50 in cash (*id.* at 55, 57, 58).  When the clerk indicated his interest in "do[ing]" more EBT cards, the Investigator told him that he would call "in a couple days" (*id.* at 58).  The clerk took all of the groceries that were purchased at Save-a-Lot, including twenty-six Banquet frozen dinners (*id.* at 58, 59).  The Dairy Market sold this brand of frozen meals (*id.* at 34).

On January 22, 2014, the clerk repeated his interest in purchasing two more EBT cards from the Investigator (*id.* at 60, 62-63).  At the Dairy Market a week later, the Investigator provided the clerk with an EBT card, which had a balance of $150, and with the card's personal identification number ("PIN") (*id.* at 64, 66-67).  The clerk agreed to pay the Investigator $75 for the card (*id.* at 67).  The EBT card was used at two stores to obtain $149.91 of goods (*id.* at 68).

3

The next day, the clerk paid the Investigator $75 in cash for the EBT card: $60 that he retrieved

from his car; and $15 that he took from the Dairy Market's cash register (*id*. at 68, 70, 72).

The Investigator then provided the clerk with a third EBT card, which had a balance of

$195, and told the clerk to "'wipe it out'" (*id*. at 72). This card was used to redeem $196.35 in

SNAP benefits at three stores (*id*. at 73). On February 3, 2014 at the Dairy Market, the clerk

paid the Investigator $100 for the third EBT card, and set up the fourth EBT card transaction,

which occurred on February 6, 2014 when the Investigator supplied the clerk with an EBT card

that had $380 of benefits (*id*. at 73, 75, 77, 82, 85). This EBT card was used to redeem $395.09

in SNAP benefits from five stores over three days (*id*. at 86, 90). At the Dairy Market on

February 10, 2014, the clerk paid the Investigator $200 in cash for the $395.09 of SNAP benefits

(*id*. at 86, 88, 90).

III.   PROCEDURAL HISTORY

As a result of the investigation, on May 20, 2014, the FNS notified Plaintiff that his store

was charged with trafficking in SNAP benefits and that the sanction was permanent

disqualification (*id*. at 37-39). The FNS offered Plaintiff ten days to provide documentation to

show that he qualified for a CMP in lieu of permanent disqualification (*id*.). Plaintiff responded

through his attorney's letter of May 29, 2014 (*id*. at 92-93). In an effort to mitigate the sanction,

the letter stated, in part: "[Plaintiff] has had a policy of training his employees on how to

conduct the EBT/Food Stamps transactions. He trained his employees personally" (*id*. at 92).

Plaintiff detailed the steps that he took to ensure compliance with the SNAP regulations after he

was notified of the violations (*id*.). In addition, Plaintiff pointed out that he was not involved

with the trafficking, that he fired the clerk, and that the neighborhood would suffer if the Dairy

Market was permanently disqualified from offering SNAP benefits (*id*. at 92-93).

4

On June 11, 2014, the FNS notified Plaintiff that he was not eligible for a CMP "because [he] failed to submit sufficient evidence to demonstrate that [his] firm had established and implemented an effective compliance policy and program to prevent violations of the [SNAP]" and that the Dairy Market was permanently disqualified from the program (*id.* at 100-101). Plaintiff requested administrative review of the FNS decision to permanently deprive him from participation in SNAP (*id.* at 104). Plaintiff submitted the Compliance Policy for Dairy Market Employees that he "posts in the store . . . that has also been handed to new employees to review prior to working in the store" along with his attorney's letter (*id.* at 104, 106-107). The letter indicated that, "[i]n the past, [Plaintiff] has personally reviewed the SNAP regulations with all employees" (*id.* at 104). Plaintiff repeated his other arguments in support of a CMP (*id.* at 104-105).

In response to the Administrative Review Officer's invitation to submit additional information, Plaintiff indicated, again through his attorney's letter: that he owned several convenience stores that participate in SNAP and had no other violations; that he filed a police report outlining the clerk's acts; that he fired the clerk "immediately" after he learned of the violations; and that the neighborhood would suffer if the store did not participate in SNAP (*id.* at 109, 114-115). The Administrative Review Officer found that the violations occurred and sustained the decision to permanently disqualify the Dairy Market (*id.* at 132, 138). Plaintiff requested review by the district court. *See* 7 U.S.C. § 2023(a).

Plaintiff's complaint was entered in the court on October 16, 2014 and the government answered (Dkt. Nos. 1 and 7). The government moved for summary judgment (Dkt. No. 21). Plaintiff objects (Dkt. No. 23). The District Judge referred the motion to this court for a report and recommendation (Dkt. No. 24).

IV.    U̲N̲A̲L̲Y̲S̲I̲S̲

A.    S̲u̲m̲m̲a̲r̲y̲ ̲J̲u̲d̲g̲m̲e̲n̲t̲ ̲S̲t̲a̲n̲d̲a̲r̲d̲

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Chadwick v. WellPoint, Inc.,* 561 F.3d 38, 43 (1st Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A fact is 'material' only if it 'possess[es] "the capacity to sway the outcome of the litigation under the applicable law."'" *Vineberg v. Bissonnette,* 548 F.3d 50, 56 (1st Cir. 2008) (quoting *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir .1997)). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de P.R. para la Diffusión Pública,* 498 F.3d 9, 12 (1st Cir. 2007) (quoting *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not '"to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."'" *Noonan v. Staples, Inc.,* 556 F.3d 20, 25 (1st Cir. 2009) (quoting *Asociación de Periodistas de P.R. v. Mueller,* 529 F.3d 52, 55 (1st Cir.2008)).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,'" *Meuser v. Fed. Express Corp.,* 564 F.3d 507, 515 (1st Cir. 2009) (quoting *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Meuser,* 564 F.3d at 515 (quoting *Welch v. Ciampa,* 542 F.3d 927, 935 (1st Cir. 2008)). "When ruling on a party's motion for summary judgment, a trial court 'constru[es] the record in the light most favorable to the nonmovant and resolv[es] all

reasonable inferences in [that] party's favor.'" *Rockland Convenience Store,* 2011 WL 5120410, at *1 (quoting *Meuser,* 564 F.3d at 515, citing *Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir. 2002)). An appeal of a ruling by the USDA is a proper subject for summary judgment. *See Kassem v. United States*, No. 02-CV-0546E(F), 2003 WL 21382906, at *2 (W.D.N.Y. Apr. 15, 2003).

B. <u>Standard of Review of the Administrative Decision and Burden of Proof</u>

"Under the enforcement scheme envisioned by Congress [for violations of the Food Stamp Act], and as interpreted by [the First Circuit], the agency determines when violations have occurred and chooses a sanction which appropriately fulfills the policies of the Food Stamp Act." *Broad St. Food Mkt., Inc. v. United States*, 720 F.2d 217, 220 (1st Cir. 1983). "The First Circuit has adopted a bifurcated standard of review in food stamp cases, applying a de novo standard to the determination of the violation and a limited administrative review standard to the sanction imposed." *Objio v. United States*, 113 F. Supp. 2d 204, 208 (D. Mass. 2000) (citing *Broad St. Food Mkt., Inc.,* 720 F.2d at 220; *Collazo v. United States,* 668 F.2d 60, 65 (1st Cir. 1981); *Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir. 1980)). "Specifically, the First Circuit has held that a district court can only overturn the decision of an administrative agency to impose a sanction if the district court finds the decision to be arbitrary and capricious." *Objio*, 113 F. Supp. 2d at 208 (citing *Broad St. Food Mkt.,* 720 F.2d at 220).

> This holding is in accordance with the fundamental principles proclaimed by the Supreme Court "that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy, the relation of the remedy to policy is peculiarly a matter for administrative competence" and that "[the FNS's] choice of sanction is not to be overturned unless [the reviewing court] might find it is 'unwarranted in law . . . or without justification in fact.'"

*Objio*, 113 F. Supp. 2d at 208 (quoting *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185–86 (1973); quoting *Am. Power Co. v. SEC,* 329 U.S. 90, 112–13 (1946)).

7

"Plaintiff[], as the part[y] challenging [his] removal from SNAP, bear[s] the burden of proving by a preponderance of the evidence that the agency's action was 'invalid.'" *Hajifarah v. United States*, 779 F. Supp. 2d 191, 204 (D. Me. 2011) (quoting 7 U.S.C. § 2023(a)(16)); *see also Fells v. United States,* 627 F.3d 1250, 1253 n.4 (7th Cir. 2010); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997).  The operative statute, 7 U.S.C. § 2023(a)(15), permits Plaintiff to seek judicial review of the FNS's determinations:  (1) that his firm engaged in the trafficking of SNAP benefits; and (2) that the sanction of permanent disqualification was warranted.  The separate inquiries will be discussed in turn.

C.     The FNS's determination that SNAP regulations were violated.

As noted above, the FNS's finding of a violation of the law is subject to de novo review by the district court.  *See Objio*, 113 F. Supp. 2d at 208; 7 U.S.C. § 2023(a)(15).  "Plaintiff has the burden of proving by a preponderance of the evidence on this fresh record that the administrative decision was invalid because violations did not occur." *Brothers Food & Liquor, Inc. v. United States*, 626 F. Supp. 2d 875, 879 (N.D. Ill. 2009).

It does not appear that Plaintiff challenges the evidence that undergirds FNS's determination that the Dairy Market employee violated the law.  "In an appeal from a USDA disqualification decision, '[t]o defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact [as] to every alleged violation charged against it." *Rockland Convenience Store*, 2011 WL 5120410, at *8 (quoting *Young Choi, Inc. v. United States*, 639 F. Supp. 2d 1169, 1178 (D. Haw. 2009)).  First, Plaintiff's responses to the FNS's advisements of its findings and sanction do not dispute that the violations occurred (A.R. at 92-93, 96, 104-105, 114-123).  In addition, although the government's motion for summary judgment includes a concise statement of undisputed material facts supported by the administrative record (Dkt. No.

22 at 2-5), Plaintiff's opposition to the motion fails to comply with the requirements of Local

Rule 56.1, which directs the party who opposes a motion for summary judgment to file "a

concise statement of the material facts of record as to which it is contended that there is a

genuine issue to be tried, with page references to affidavits, depositions and other

documentation" (Dkt. No. 23). LR, D. Mass. 56.1. Plaintiff does not identify any genuine issues

of material fact regarding the violations (Dkt. No. 23). "If an opposing party fails to dispute the

material facts set forth in the statement served by the moving party, those material facts 'will be

deemed for purposes of the motion to be admitted by the opposing part[y].'" *Foley v. Yacht

Mgmt. Grp., Inc.*, Civil Action No. 09-11280-DJC, 2011 WL 4020835, at *3 (D. Mass. Sept. 9,

2011) (quoting LR, D. Mass. 56.1). *See also Hamdi Halal Market L.L.C. v. United States*, 947 F.

Supp. 2d 159, 162 n.1 (D. Mass. 2013). Because Plaintiff does not dispute the FNS's statement

of material facts, "for the purposes of this motion, those material facts will be deemed admitted. .

. ." *Foley*, 2011 WL 4020835, at *3 (citing LR, D. Mass. 56.1). *See Caban Hernandez v. Philip

Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (noting that when "a party opposing summary

judgment fails to act in accordance with the rigors that such a rule imposes, a district court is

free, in the exercise of its sound discretion, to accept the moving party's facts as stated"). In

deciding Defendant's summary judgment motion, the court, however, still views the facts in the

light most favorable to Plaintiff. *See Anderson,* 477 U.S. at 255.

The FNS imposed the sanction of permanent disqualification on Plaintiff as a penalty for

trafficking in SNAP benefits (A.R. at 37, 100, 136-38). "Under 7 U.S.C. § 2021(b), a retail food

store shall be subject to sanctions if the store has engaged in the 'trafficking' of [SNAP

benefits]." *Bakal Bros., Inc. v. United States*, 105 F.3d 1085, 1088 (6th Cir. 1997) (quoting 7

U.S.C. § 2021(b)(3)(B)). Trafficking in SNAP benefits is defined as the "buying [or] selling . . .

of SNAP benefits issued and accessed via . . . EBT cards, card numbers and . . . PINs . . . for cash or consideration other than eligible food either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2 (2016).  In other words, trafficking includes the exchange of SNAP benefits for cash.

The undisputed facts establish that Plaintiff's employee engaged in trafficking by exchanging EBT cards for cash on four occasions in January and February 2014.  After the Inspector gave the clerk four EBT cards on separate occasions, the cards were used to obtain SNAP benefits at stores, including the Dairy Market (A.R. at 55, 57-59, 64, 66-68, 70, 72-73, 75, 77, 82, 85, 86, 88, 90) .  In exchange for the EBT cards, the clerk paid the Inspector cash in amounts that were approximately equal to 50% of the amount of SNAP benefits that were available on each EBT card (id. at 55, 57-58, 68, 73, 86, 90).  *See Quraan v. United States*, No. 1:11 CV 2813, 2012 WL 2568076, at *3-4 (N.D. Ohio July 2, 2012) (plaintiff, who exchanged cash for food purchased at other stores with an EBT card, engaged in trafficking).  The exchanges of the cards and the cash either were arranged or occurred at the Dairy Market while the clerk was working there (A.R. at 53-55, 60, 62-63, 66-68, 70, 72, 73, 75, 77, 85, 86, 88, 90).

Plaintiff's assertion -- that he was unaware that his employee exchanged money for SNAP benefits -- is inconsequential as a matter of law because approved food store owners are responsible for the acts of their employees irrespective of the owners' knowledge or lack of participation in trafficking (Dkt. No. 1 at ¶4).  *See Bakal Bros., Inc.*, 105 F.3d at 1089 ("A store is responsible for the trafficking of food stamps by '[p]ersonnel of the firm'" (quoting 7 C.F.R. § 278.6(e)(1)(i)(1996)); *Ziyad Mini Mkt. v. United States*, 302 F. Supp. 2d 124, 127 (W.D.N.Y. 2003); *Arias v. United States*, No. 13 Civ. 8542(HBP), 2014 WL 5004409, at *10 (S.D.N.Y. Sept. 29, 2014) (citing cases).  Section 2021(b)(3)(B) of Title 7 of the United States Code

"clearly permits [FNS] to impose a sanction -- either permanent disqualification or a civil money penalty -- on an 'innocent' store owner for trafficking by employees." *Bakal Bros.*, *Inc.*, 105 F.3d at 1088.  "Congress specifically intended that *all* owners be subject at least to some penalty, regardless of fault." *Traficanti v. United States*, 227 F.3d 170, 174 (4th Cir. 2000).  *See Kim,* 121 F.3d at 1273 (listing cases).  "Congress chose such a strict liability regime in order to ensure that the person in the best position to prevent fraud -- the owner -- had sufficient incentive to stop wayward employees from stealing from the government." *Traficanti*, 227 F.3d at 174-75.  "Even assuming [Plaintiff's] ignorance of the violations, the statutory scheme dictates that he face the consequences for his employee's criminal behavior." *Id*. at 175.  *See TRM, Inc. v. United States,* 52 F.3d 941, 945 (11th Cir. 1995) ("We conclude that Congress would not have provided a [CMP] as an alternative to permanent disqualification for innocent owners had it not felt that innocent owners could be disqualified under the Food Stamp Act"); *Goldstein v. United States,* 9 F.3d 521, 524 (6th Cir. 1993) (holding that innocent owner could be permanently disqualified from food stamp program); *Freedman v. United States Dep't of Agriculture,* 926 F.2d 252, 259 (3d Cir. 1991) ("The fact that the [CMP] was to be imposed only if it is determined that a store owner had an effective policy to prevent violations clearly indicates that Congress intended 'innocent' store owners be subject to the penalties authorized by section 2021(b) of the Food Stamp Act as amended in 1988"); *Ziyad Mini Mkt.*, 302 F. Supp. 2d at 128 ("Congress intended that store owners be held responsible when" a store employee commits a food stamp violation without the owner's knowledge).  *Compare Bakal Bros., Inc.,* 105 F.3d at 1089 ("On each of the three occasions when [the employee] engaged in trafficking, the transaction took place in the parking lot of the store while [he] was on duty.  The fact that the trafficking took place in the parking lot does not relieve the store of responsibility for the transactions").

Because Plaintiff fails to establish a genuine issue of material fact as to the trafficking

violation, the court finds that Plaintiff engaged in trafficking and the government is entitled to

summary judgment.

        D.      The sanction of permanent disqualification.

Plaintiff argues that the sanction of permanent disqualification for trafficking was

arbitrary and capricious.  The government, however, disputes this claim and asserts that the

sanction was required.  "Where . . . the USDA has followed the applicable laws and regulations,

its decision may not be overturned as arbitrary and capricious." *Kassem,* 2003 WL 21382906, at

*3 (citing *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981)).  Because the FNS

followed the laws and regulations, the penalty was warranted.

Permanent disqualification is the mandatory penalty for trafficking in SNAP benefits.

*See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i).  The FNS has discretion, however, to

impose a CMP if there is substantial documentary evidence that demonstrates that, before the

violation, the store took steps to insure that its employees complied with the SNAP laws and

regulations.  *See Rockland Convenience Store*, 2011 WL 5120410 at *2 ("For trafficking in

SNAP benefits, a food store shall be disqualified permanently, unless 'the Secretary [of

Agriculture] determines that there is substantial evidence that such store . . . had an effective

policy and program in effect to prevent violation of the [statute] and regulations.' . . . If the

Secretary makes such a determination, he or she has the discretion to impose a [CMP] in lieu of

disqualification" (quoting 7 U.S.C. § 2021(b)(3)(B)).  In order for a store owner to qualify for a

CMP, he or she must demonstrate by substantial evidence the following four criteria:

> (1) the store must have "an effective compliance policy" as described in the regulations;
> (2) the store must show its compliance policy existed and was in force *prior to* the
> violations; (3) the store must have "an effective personnel training program" as specified
> in the regulations; and (4) the store owners were "not aware of, did not approve, did not

benefit from, or [were] not in any way involved in the conduct of approval of trafficking violations," or had not done so on a previous occasion.

*Razzak v. United States*, No. A-13-CA-207-SS, 2014 WL 582079, at *3 (W.D. Tex. Feb. 13, 2014) (quoting 7 C.F.R. § 278.6(i)) (emphasis added). *See also Kassem*, 2003 WL 21382906, at *4 (quoting 7 C.F.R. § 278.6(i)). "All four of these criteria must be satisfied [by substantial evidence] in order to impose a [CMP]." *Castillo v. United States*, 989 F. Supp. 413, 418 (D. Conn. 1997). *See also De Jung Yun v. United States*, 63 F. Supp. 2d 578, 582-83 (E.D. Pa. 1999). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kim*, 121 F.3d at 1276 (quoting *In re Transcon Lines,* 89 F.3d 559, 564 (9th Cir. 1996)). *See Affum v. United States*, 566 F.3d 1150, 1162-163 (D.C. Cir. 2009).

"In order to comply with the 'substantial evidence' requirement, a firm must submit documentary evidence sufficient to establish the . . . [four] elements" that are specified in the regulations. *Arias,* 2014 WL 5004409, at *12.

> As to the existence of an effective compliance policy, "FNS shall consider written and dated statements of firm policy." [7 C.F.R.] § 278.6(i)(1). As to the existence of the policy before the violations occurred, "policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation." *Id.* And as to the existence of an effective personnel training program, "A firm which seeks a [CMP] in lieu of a permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)." *Id.* at § 278.6(i)(2).

*21871 Hempstead Food Corp. v. United States,* No. 14 Civ. 00006(ILG), 2014 WL 4402069, at *3 (E.D.N.Y. Sept. 4, 2014). Although on May 29, 2014, Plaintiff stated that he "has had a policy of training his employees on how to conduct the EBT/Food Stamps transactions" and that "[h]e trained his employees personally" (A.R. at 92, 104), he failed to offer the requisite

documentation to support these assertions either in his response to the trafficking charge or in any other communication with the FNS (A.R. at 92-93, 104, 114-24, 138). Instead, Plaintiff, through his attorney, offered a written description of Plaintiff's after-the-fact remediation efforts, including a written, but undated, compliance policy, and the fact that he discharged the errant clerk and reported him to the police (A.R. at 92, 104, 106-107). *See Razzak*, 2014 WL 582079, at \*4 ("SNAP regulations do not require consideration of correction action such as employee termination after a violation occurs"). Plaintiff's assertions fall far short of making the showing that the regulations require for imposition of a CMP instead of permanent disqualification (A.R. at 138). *See Traficanti,* 227 F.3d at 174-176 ("Store owners cannot simply attest to having effective antifraud programs [prior to the violation]; rather, they must prove it" through "written documentation"); *Quraan*, 2012 WL 2568076, at \*4 (affirming permanent disqualification where "[t]here [was] no evidence before the court that the documentation outlined in the Code was submitted to the FNS as required"); *see also Rockland Convenience Store*, 2011 WL 5120410, at \*13 (granting summary judgement where plaintiff "produced no evidence to create a triable issue of fact with regard to its entitlement to a civil monetary penalty"). Because Plaintiff did not submit substantial evidence to demonstrate that the store had established and implemented an effective compliance policy before the violation, and because all of the four regulatory criteria must be satisfied in order for FNS to impose a CMP in lieu of permanent disqualification, Plaintiff's alleged lack of knowledge of the clerk's acts is not sufficient to mitigate the penalty. *See Castillo*, 989 F. Supp. 2d at 582-83.

Plaintiff's argument – that his permanent disqualification will result in a substantial hardship to the food stamp households in the neighborhood – is also unpersuasive for two reasons (A.R. at 93, 105, 114-15). First, as a matter of law, a CMP "for hardship to food stamp

households may not be imposed in lieu of a permanent disqualification." 7 C.F.R. § 278.6(f)(1).

Second, Plaintiff did not demonstrate hardship for SNAP households because the regulation

requires that there be "*no other* authorized food store in the area selling as large a variety of

staple food items at comparable prices." 7 C.F.R. § 278.6(f)(1) (emphasis added). The FSN

demonstrated that "there are a total of 37 authorized stores located within 1 mile of [Plaintiff's]

store that includes 3 combination stores, 21 convenience stores, 1 large grocery store, 6 medium

grocery stores, 4 small grocery stores, 1 supermarket, and 1 superstore" (A.R. 97, 98). *See*

*Hamdi Halal Market L.L.C.*, 947 F. Supp. 2d at 166.

Plaintiff has not submitted substantial evidence to demonstrate that he complied with the

four criteria in the regulations, which permit a CMP in lieu of permanent disqualification.

Because the FNS followed the regulations, it did not act arbitrarily and capriciously in imposing

the sanction of permanent disqualification. *See Broad St. Food Mkt.,* 720 F.2d at 220; *Kassem*,

2003 WL 21382906, at *4-5 (granting summary judgment because the USDA's sanction of

permanent disqualification was not arbitrary and capricious where the agency followed the

regulations).

V.   CONCLUSION

For these reasons, it is this court's RECOMMENDATION that Defendant's Motion for

Summary Judgment (Dkt. No. 21) be ALLOWED.[2]


                                                    /s/ Katherine A. Robertson_____
                                                    KATHERINE A. ROBERTSON
                                                    United States Magistrate Judge

DATED: May 12, 2016

---

[2] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.